IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JASON DEAN WINDELL, | § | |
|     Plaintiff, | § | |
| v. | § | NO.  EP-16-CV-0194-FM |
| | § | (-LS by Consent) |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security | § | |
| Administration, | § | |
|     Defendant. | § | |

<u>MEMORANDUM OPINION</u>

Plaintiff Jason Dean Windell appeals the denial of his Social Security disability benefits claim under 42 U.S.C. § 405(g). The parties consent to my determination of the case under 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas. I **AFFIRM** the Commissioner's decision denying benefits.

I.      Facts and Proceedings

Windell alleges he became disabled in July 2014 because of post-traumatic stress disorder (PTSD), sleep apnea, hearing problems, arthritis of the neck and hip, and back problems.[1] After the Commissioner denied his initial application and request for reconsideration, an Administrative Law Judge ("ALJ") held a hearing in November 2015.[2] The ALJ heard testimony from Windell, who was represented by counsel, and from a vocational expert. In an opinion dated January 29, 2016, the ALJ determined that Windell was not disabled within the meaning of the Social Security Act.[3] The Appeals Council denied his request for review, making the decision of the ALJ the final decision of the Commissioner.[4]

Windell's sole argument is that the ALJ gave insufficient weight to a February 27, 2015 medical opinion form on which Drs. Frank Castillo[5] and Jean R. Vanderpool indicated with checkmarks that

---

[1]  R:166, 224.

[2]  R:45-84; 114, 125.

[3]  R:26-40.

[4]  R:8-14.

[5]  Windell states in his brief that Frank Castillo is an LPC (licensed professional counselor). If so, the record reflects that Castillo is also a psychiatrist with an M.D. *See* R:953 ("Dr. Frank Castillo, M.D…M.D. Psychiatry").

Windell's mental abilities to perform unskilled work were either "[s]eriously limited, but not precluded," or "[u]nable to meet competitive standards."[6] This error, he argues, caused a mistake in the determination of his residual functional capacity (what he can still do workwise), and a mistake about whether there are jobs in the national economy that he can still do.[7]

## II.    Discussion

### A.    Legal Standards

Judicial review of the Commissioner's decision is limited to two inquiries: 1) whether the decision is supported by substantial evidence on the record as a whole; and 2) whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.*

In evaluating a disability claim, the Commissioner must follow a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant can perform other relevant work. 20 C.F.R. § 404.1520(a)(4); *Boyd v. Apfel*, 239 F.3d 698, 704-05 (5th Cir. 2001).

Courts utilize four elements of proof to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 462. A court cannot, however, reweigh the evidence or try the issues *de novo*. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). The Commissioner, not the courts, must resolve

---

[6]  R:358.
[7]  ECF No. 17, at 8.

conflicts in the evidence. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

## B.     Residual Functional Capacity

Residual functional capacity, or RFC, is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545. The responsibility to determine a claimant's RFC belongs to the ALJ. 20 C.F.R. § 404.1546; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ must consider a claimant's abilities despite his or her physical and mental limitations based on the relevant evidence in the record. *Perez*, 415 F.3d at 461-62. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545. An RFC finding is used to determine if the claimant can still do his past jobs. *Perez*, 415 F.3d at 462. If unable, the RFC is then used to determine whether he can do other jobs in the national economy. *Id*.

## C.     The ALJ's Findings

In this case, the ALJ found that Windell had severe impairments of PTSD, major depressive disorder, obstructive sleep apnea, osteoarthritis, and obesity. [8] She found that Windell's mental impairments caused mild restrictions in his daily living activities, mild concentration and persistence difficulties, and moderate social functioning difficulties.[9] She determined, however, that Windell did not have an impairment severe enough to meet or equal an impairment listed in the appendix to the regulations.[10] She found that Windell retained the functional capacity to perform "light work"[11] as long as the work does not require driving, interaction with the public, or more than occasional interaction with co-workers.[12] Using vocational expert testimony, she determined that Windell could not perform his past

---

[8]  R:28.
[9]  R:30.
[10]  R:29.
[11]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).
[12]  R:31.

work,[13] but found that there are other jobs in the national economy that Windell still can do.[14]  Accordingly, she found him not disabled and not entitled to disability insurance benefits.[15]

### D. Medical Source Opinions

Ordinarily the opinion of a treating physician who is familiar with the claimant's conditions should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Indeed, such an opinion will be given controlling weight if it is well-supported by objective medical evidence and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). The opinion of a specialist is generally attributed greater weight than that of a non-specialist. *Newton*, 209 F.3d at 455. However, good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456.

Windell argues in his brief that "the ALJ does not give any of Plaintiff's *treating sources*, Frank Castillo, LPC and psychiatrist Dr. Vanderpool, great weight."[16] A physician or other acceptable medical source is a "treating source" only if that person has an "ongoing treatment relationship" with a claimant at a "frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition[]" at issue. 20 C.F.R. § 404.1502. The ALJ correctly notes that Windell met with Dr. Castillo only one time for a clinical assessment in September of 2014, and met with Dr. Vanderpool only one time for a psychiatric evaluation in October of 2014.[17] As there are no medical records, progress notes, or treatment records reflecting that Windell had an "ongoing treatment relationship" with either Dr. Castillo or Dr. Vanderpool, they do not qualify as "treating sources."

The ALJ explained that she gave little weight to the February 2015 medical opinion from Drs.

---

[13] R:38.
[14] R:39.
[15] R:40.
[16] ECF No. 17, at 4 (emphasis added).
[17] R:37; R:742-750 (Castillo clinical assessment); R:367-368 (Vanderpool psychiatric evaluation).

Castillo and Vanderpool because they each met with Windell only one time.[18] She also explains that the opinion is internally inconsistent because the social, mental, and employability deficits it describes are inconsistent with the moderate symptoms one would expect from the GAF score of 55[19] that the doctors gave Windell.

Finally, the opinion conflicts with the medical records from an actual treating provider, Dr. Sobia K. Khurram, who met with and treated Windell on multiple occasions. Dr. Khurram noted in medical records from September, October, and December 2014 that Windell's thought process was goal directed, his insight and judgment were good, he was alert, his concentration was good, and his memory was intact.[20] In November 2014, Windell told Dr. Khurram that the medication for his PTSD and anxiety was working very well.[21] In March of 2015, Dr. Khurram noted that Windell reported a 35-40% improvement in his anxiety and reported improvement in memory.[22] The ALJ correctly noted that Dr. Khurram's records do not support the extent of the limitations that Drs. Vanderpool and Castillo describe in their February 2015 medical opinion statement.

The ALJ assigned the February 2015 opinion of Drs. Vanderpool and Castillo little weight because each doctor had only met with Windell one time, the opinion itself was internally inconsistent, and most importantly, the contents of the opinion were inconsistent with the medical records from an actual treating physician who met with and treated Windell on multiple occasions. The ALJ properly considered all of the opinion evidence in this case, and substantial evidence supports her decision. I find no legal error, and the decision of the Commissioner is **AFFIRMED**.

---

[18] R:37.
[19] A GAF (Global Assessment of Functioning) score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (Am. Psychiatric Ass'n, 4th ed. Text Revision 2000).
[20] R:508-09, 513, 527, 537.
[21] R:529.
[22] R:499.

**SIGNED** and **ENTERED** on March 9, 2017.

/s/ LEON SCHYDLOWER
**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**